IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MELODY POWER,                      )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    CASE NO. CV416-289
                                   )
OFFICE OF CHATHAM COUNTY           )
PUBLIC DEFENDER; ROBERT            )
PERSSE, in his capacity as         )
Chief Circuit Public               )
Defender; MICHAEL EDWARDS,         )
individually and in his            )
capacity as Chief Circuit          )
Public Defender; WILLIAM           )
LEWIS, individually and in         )
his capacity as Assistant          )
Chief Public Defender; and         )
GEORGIA PUBLIC DEFENDER            )
COUNCIL;                           )
                                   )
        Defendants.                )
_____    )

## O R D E R

Before the Court is Defendants' Motion for Summary
Judgment. (Doc. 29.) For the following reasons, Defendants'
motion is **GRANTED** and all of Plaintiff's claims are
**DISMISSED**. The Clerk of Court is **DIRECTED** to close this
case.

### BACKGROUND

This case involves allegations of racial
discrimination, age-based retaliation, and denial of the
freedom of speech guaranteed by the First Amendment. In

2006, Plaintiff Melody Power,[1] an African-American, began her employment with Defendant Office of Chatham County Public Defender[2] ("CCPD") and was eventually promoted to the position of administrative assistant, commonly referred to as an anchor and responsible for many aspects of routine case management for a specific trial team. (Doc. 38 at 2; Doc. 29, Attach. 2 ¶ 2.) Defendant CCPD is a division of the Georgia Public Defender Council ("GPDC") (Doc. 29, Attach. 2 at 1), which Plaintiff describes as "an independent agency within the executive branch of the state government of Georgia" (Doc. 1 ¶ 16). Defendant Michael Edwards was the Chief Public Defender for Defendant CCPD at the time of the alleged discrimination, while Defendant Robert Persse currently holds that position. (Id. ¶¶ 7, 13.) Defendant William Lewis serves as the Chief Assistant

---

[1] Because Plaintiff is the non-moving party, the Court construes the evidence in the record and all reasonable factual inferences in Plaintiff's favor when ruling on Defendants' Motion for Summary Judgment. See Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). However, the Court is not required to assume the truth or accuracy of mere speculation or conjecture. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

[2] The official name for the Office of Chatham County Public Defender is the Office of the Circuit Public Defender for the Eastern Judicial Circuit of Georgia. Because there appears to be no confusion, the Court will also refer to it as Defendant CCPD. However, Plaintiff would be well served if she actually bothered spending a few minutes to determine the correct name of the entity she claims violated her civil rights.

Public Defender, and it is mostly Plaintiff's interaction with Defendant Lewis that forms the basis for her claims. (Id. ¶ 8.)

According to Plaintiff, Defendant Lewis's daughter wed her female partner during the fall of 2014. (Doc. 38 at 2.) Defendant Lewis informed Plaintiff of the upcoming ceremony, who responded that "the Bible does not condone same sex marriage and homosexuality." (Id.) Soon after the comment, Plaintiff was identified as an agenda item for a meeting of Defendant CCPD's management team. (Id. at 3.) Sometime after, Plaintiff's employment was terminated.[3] (Id. at 4.)

For their part,[4] Defendants claim that Plaintiff's work performance became increasingly problematic during the

---

[3] The factual narrative contained in Plaintiff's response is sparse at best, leaving this Court to pick through various filings and cobble together Plaintiff's alleged facts that are supported by evidence in the record. In this Court's opinion, counsel's lack of effort in simply presenting a factual account at the beginning of the motion does her client a disservice in this case. Regardless, this Court has endeavored to provide Plaintiff the legal assistance lacking from her paid counsel in this case.

[4] Not to be outdone, Defendants elected to simply omit any factual narrative from their motion. Instead, Defendants incorporated their contemporaneously filed Statement of Material Facts into the Motion for Summary Judgment. Defendants claim this was done in an effort "[t]o avoid redundancy." (Doc. 29, Attach. 1 at 3.) However, the inclusion in a motion for summary judgment of a factual narrative tailored to the specific arguments raised in that motion is anything but redundant. Similar to counsel for

course of her employment. (Doc. 29, Attach. 2 ¶ 7.) Concerns about Plaintiff's work performance became a regular topic at Defendant CCPD's management team meetings. (Id. ¶ 7.) In addition, the anchors were repeatedly holding team meetings purportedly due to Plaintiff's poor performance. (Id. ¶¶ 9-13.) After fielding several complaints from Plaintiff's fellow anchors, Defendants Edwards and Lewis each attended separate anchor meetings. (Id. ¶¶ 13-18.) Based on their observations, Defendants Edwards and Lewis concluded that Plaintiff did not work well with the other anchors and was often the source of conflict during the anchor meetings. (Id.)

On February 3, 2015, Defendant CCPD's management team decided to terminate Plaintiff's employment. (Id. ¶ 43.) Defendants allege a litany of reasons for Plaintiff's termination, mostly related to Plaintiff's work performance and her inability to work well with fellow anchors. (Id.

---

Plaintiff, counsel for Defendants have also abrogated their responsibilities to both their clients and this Court, which must now sift through seventy-one separate factual statements to craft an overall narrative of Defendants' factual allegations. Counsel for Plaintiff and Defendants would all be wise to conduct an honest review of their best practices with respect to dispositive motions and assess whether they needlessly foisted on this Court a large portion of their responsibility for advocating their clients' cause in this case.

¶ 44.) Defendant CCPD replaced Plaintiff with another African-American. (Id. ¶ 46.)

On February 19, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 47.) In the charge, Plaintiff alleged discrimination based on race, age, and religion. (Id., Ex. 46.) After receiving her Notice of Right to Sue, Plaintiff timely filed her complaint in this Court. (Doc. 1.) In her complaint, Plaintiff has brought claims against all Defendants for employment discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Doc. 1 ¶¶ 60-66), violation of her First Amendment right to freedom of speech (id. ¶¶ 67-72), retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (Doc. 1 ¶¶ 73-77), and racial discrimination in violation of 18 U.S.C. § 1981 (Doc. 1 ¶¶ 78-83).[5]

---

[5] Plaintiff's complaint is yet another example of the poor drafting that is the hallmark of counsel's efforts in this case. Counsel did not even bother to state whether the claims were against any specific Defendant and in what capacity that Defendant was being sued. Instead, counsel just named every Defendant for every claim. In addition, Count III is entitled "Retaliation Under the ADEA," but appears to be alleging only that Defendants impermissibly terminated Plaintiff due to her age. To say that counsel did her client a disservice in this case would be a gross understatement.

In their Motion for Summary Judgment, Defendants argue that Defendants GPDC, Persee, Edwards, and Lewis cannot be sued in their official capacity because they are not persons subject to liability under 18 U.S.C. § 1983. (Doc. 29, Attach. 1 at 4-5.) Defendants also claim that Defendants GPDC, Persee, Edwards, and Lewis, in their official capacities, are entitled to Eleventh Amendment immunity, rendering them immune from any liability for monetary damages under § 1983. (Id. at 5-6.) Lastly, Defendants maintain that Defendants Edwards and Lewis, in their individual capacities, are entitled to qualified immunity because Plaintiff has not established that these Defendants violated a clearly established constitutional right. (Id. at 6-9.)

With respect to Plaintiff's Title VII and 18 U.S.C. § 1981 claims, Defendants argue that she has failed to establish even a prima facie case of racial discrimination because there is no evidence that any Defendant treated differently a similarly situated employee outside of Plaintiff's protected class. (Id. at 10-15.) In addition, Defendants contend that Plaintiff's termination is supported by legitimate non-discriminatory reasons, mainly Plaintiff's poor work performance. (Id. at 15-16.) Finally, Defendants maintain that Plaintiff has not presented any

evidence suggesting that Defendants' non-discriminatory reason for terminating her employment was pretext for intentional discrimination. (Id. at 16-18.)

Defendants assert that they are entitled to Eleventh Amendment immunity with respect to Plaintiff's age discrimination claims. (Id. at 18-20.) Also, Defendants argue that these claims lack merit for the same reasons as Plaintiff's race discrimination claims. (Id. at 19-20.) With respect to Plaintiff's First Amendment claims, Defendants reason that the speech is unprotected because it was not public, but rather a private conversation between Plaintiff and Defendant Lewis. (Id. at 21-23.) Even assuming it was a public comment, Defendants still contend that Plaintiff's claims fail because there is no evidence that her comment played a substantial part in her termination. (Id. at 23.) According to Defendants, Defendant Lewis was the only member of the management team aware of Plaintiff's comment. (Id.) Moreover, Plaintiff's termination occurred over three months after her comment, suggesting that the comment and termination were not causally related. (Id. at 24.) Finally, Defendants maintain that Plaintiff has failed to establish that she would not have been terminated absent her comment because Defendants

have articulated legitimate non-discriminatory reasons for her termination. (Id. at 24-25.)

In response, Plaintiff argues that the Eleventh Amendment is inapplicable to Defendants, in their official capacity, because she seeks prospective injunctive relief to prevent a continuing violation of federal law. (Doc. 38 at 4.) Also, Plaintiff maintains that Defendants, in their official capacity, are not entitled to Eleventh Amendment immunity because they are not arms of the state, or acting as agents or instrumentalities of the state. (Id. at 5-8.) With respect to the First Amendment claims, Plaintiff contends that the speech was not private, but public commentary on a matter of public concern, and played a substantial part in Defendants' decision to terminate her employment. (Id. at 8-13.)

Regarding Defendants' proffered reasons for Plaintiff's termination, Plaintiff asserts that the complaints concerning her work performance were mere pretext for Defendants' discrimination. (Id. at 14-24.) Plaintiff claims that the management team relied on a "false narrative" when deciding to terminate her employment. (Id. at 14.) According to Plaintiff, there was no evidence that any individual believed her work performance to be deficient. (Id. at 14-15.) While

confusing, Plaintiff appears to contend that she was retaliated[6] against for complaining that she was the subject of discrimination nebulously based on the way her fellow employees treated her in the workplace. (Id. at 17-18.) Regardless, Plaintiff goes to great lengths in her attempt to rebut the litany of alleged instances of her poor performance in the workplace. (Id. at 19-24.)

Seemingly addressing her Title VII claims, Plaintiff identifies two similarly situated comparators: Carrie Miller and Tiffany Talley. (Id. at 28-29.) Confusingly, Plaintiff then argues that her Title VII claims are valid because these individuals were white and under the age of forty, and were provided some sort of training that was not offered to Plaintiff. (Id. at 29.) Plaintiff then identifies another white individual, Barbara Rogers, whom Plaintiff asserts evinced an "attitude," but was permitted to retire in lieu of termination. (Id.) Continuing her ever

---

[6] The inclusion of argument concerning Title VII retaliation is also confusing. Plaintiff's charge of discrimination, filed with the EEOC after she was terminated, fails to specify that she was the subject of unlawful retaliation in any form. (Doc. 29, Ex. 46.) While Plaintiff's complaint does mention retaliation, it is only in the context of protected speech and the ADEA. (Doc. 1.) However, Plaintiff entitles Count III as "Retaliation Under the ADEA," but only alleges discrimination due to her age and not any actual retaliation. Whether the result of some unlikely oversight or simply more evidence of counsel's poor drafting, Plaintiff's complaint clearly lacks any claim for retaliation under Title VII.

shifting brief, Plaintiff then contends that a co-worker's statement concerning "generational differences" should be imputed to the entire management team as direct evidence of age discrimination. (Id. at 29-30.)

Moving on, Plaintiff claims that Defendants Edwards and Lewis are not entitled to qualified immunity with respect to her First Amendment claims because their conduct is obviously unconstitutional. (Id. at 30-31.) Finally, Plaintiff argues that the Eleventh Amendment does not grant Defendants, in their individual capacities, immunity from her § 1981 claims. (Id. at 31-32.) With respect to the § 1981 claims, Plaintiff titles her argument as establishing "a circumstantial case evidence [sic] of discrimination and retaliation based upon her race." (Id. at 32.) However, this section of Plaintiff's brief does not even mention racial discrimination. A generous[7] reading of Plaintiff's meandering argument is that Defendants violated § 1981 by retaliating against her for expressing an opinion in opposition to gay marriage. (Id. at 32-33.)

---

[7] Indeed, only a very generous reading could place Plaintiff's argument in the overall context of her claims.

**ANALYSIS**

I.   <u>SUMMARY JUDGMENT STANDARD</u>

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u> The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. <u>DeLong Equip. Co. v. Wash. Mills Abrasive Co.</u>, 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

11

> [A] party seeking summary judgment always bears
> the initial responsibility of informing the
> district court of the basis for its motion, and
> identifying those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the
> affidavits, if any, which it believes
> demonstrate the absence of a genuine issue of
> material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II. COUNT I: "VIOLATION OF PLAINTIFF'S RIGHTS UNDER TITLE VII"

In this count, Plaintiff brings claims against all Defendants, in both their individual and official capacities, for "discrimination based upon her race, Black." (Doc. 1 ¶ 61.) Plaintiff alleges that "[t]he acts and omissions of Defendant's agents amounted to violations of Title VII . . . by subjecting her to different treatment in the terms and conditions of her employment on the basis of her race, black." (Id. ¶ 63.) Based on these allegations, Plaintiff has alleged only disparate treatment claims. Completely absent from Plaintiff's complaint is any allegation of impermissible retaliation in violation of Title VII. This would conform to Plaintiff's charge of discrimination filed with the EEOC, which was completely devoid of any mention of improper retaliation. As a result, this Court will only address Plaintiff's arguments relating to disparate treatment.

In their Motion for Summary Judgment, Defendants argue that Plaintiff has failed to establish a prima facie case of discrimination because she is unable to identify any evidence that a similarly situated employee outside of her protected class received more favorable treatment. (Doc. 29, Attach. 1 at 11-15.) In addition, Defendants contend

that they have articulated a legitimate, non-discriminatory reason for terminating Plaintiff—her work performance and conflicts with fellow co-workers. (Id. at 15-16.) Defendants maintain that Plaintiff has not offered any evidence to rebut these proffered reasons for her termination. (Id. at 16-18.)

Plaintiff appears to identify three comparators at various points in her response. In the facts section, Plaintiff points to Barbara Rogers: "a white administrative assistant over 40, whose 'attitude' was tolerated by the Chatham PD until she retired; [] was 'rough around the edges' and 'had no filter.' " (Doc. 38 at 3-4.) At two separate points, Plaintiff identifies Carrie Miller, a white anchor under forty whom Plaintiff claims admitted to being involved in office conflicts, as well as a source of drama, discord, and conflict, but was not terminated. (Id. at 4.) Plaintiff also states that Ms. Miller, along with fellow anchor Tiffany Talley, were provided training opportunities that Defendants did not offer to Plaintiff. (Id. at 28-29.)

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of unlawful racial discrimination by presenting direct, circumstantial, or statistical evidence of discrimination. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). To assess a disparate treatment claim[8] based only on circumstantial evidence, such as Plaintiff's claims in this case, the Court must employ the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). Under this test, a plaintiff must establish a prima facie case of racial discrimination by proving four elements: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) similarly situated employees outside of the plaintiff's protected class were treated more favorably; and (4) she was qualified for the position. Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). If a plaintiff can demonstrate the elements of a prima facie case, then a burden of production falls to the employer to articulate a

---

[8] Plaintiff's claim is one of disparate treatment—Defendants treated Plaintiff differently based on her race. See Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (quoting Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).

legitimate, non-discriminatory reason for the adverse employment action. Alexander v. Fulton Cty., Ga., 207 F.3d 1303, 1336 (11th Cir. 2000). If the employer articulates a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to demonstrate that the employer's stated reason was a pretext for discrimination. Id. At this point, should the plaintiff fail to establish the presence of a genuine issue of material fact that the employer's reason was merely pretextual, then the employer is entitled to summary judgment in its favor. Cuddeback, 381 F.3d at 1235.

After reviewing the record in this case and taking the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not established a prima facie case on her Title VII claims because she cannot point to a similarly situated employee outside of Plaintiff's protected class that was treated more favorably. To determine whether an employee is similarly situated, the Court must look at whether both the plaintiff and the employee engaged in or were accused of the same conduct, but were disciplined by their employer in different fashions. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (quoting Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir. 1998)). When assessing the

similarity of employees subjected to discipline, the nature of the offenses necessitating discipline and the types of punishments meted out are the prime analytical factors. Id. (quoting Jones, 137 F.3d at 1311). In this circuit, both the quantity and quality of the comparator's misconduct must be nearly identical so that courts do not second guess an employer's human resources decision. Id. "[E]xact correlation is neither likely nor necessary, but the cases must be fair congeners," Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), to prevent "confusing apples with oranges," Maniccia, 171 F.3d at 1368.

Taking the facts in the light most favorable to Plaintiff, this Court is unable to conclude that the quality and quantity of her proffered comparators' misconduct was sufficiently similar to Plaintiff's such that any are a valid comparator. Basically, Plaintiff failed to provide any actual detail describing Mses. Roger's and Miller's misconduct that would support a conclusion that it was similar to Plaintiff's. Rather, Plaintiff simply states that Ms. Rogers was " 'rough around the edges' and had 'no filter.' " (Doc. 38 at 3-4.) With respect to Ms. Miller, Plaintiff claims that Ms. Miller

"admitted to conflicts," and "was a source of the drama, the discord and conflict in the office." (Id. at 4.)

These broad, general statements concerning the comparators' alleged behavior lack anything close to the level of specificity required to assess its similarity to Plaintiff's misconduct. Plaintiff has failed to inform the Court how and to what extent Ms. Rogers was rough around the edges, or what type of conflicts, drama, and discord were associated with Ms. Miller's behavior. There is not even the slightest attempt on Plaintiff's part to compare any specific type of misconduct, only the conclusory inference[9] that these white employees committed similar misconduct without suffering any adverse employment actions.

Plaintiff provides even less detail with respect to the co-workers whom she alleges received training that she was never provided. It is unclear from Plaintiff's brief what sort of training she was denied and whether she was even qualified to receive that training. Plaintiff just offers some nebulous statements about training that a few

_____

[9] Amazingly, Plaintiff does not even definitively state in her response that these individuals were similarly situated co-workers outside of her protected class who committed similar misconduct without receiving any disciplinary action. The Court resorts to implying this conclusion by using Plaintiff's few general statements and the title of that section of her brief.

other co-workers were provided, but she was not. Again, Plaintiff has simply not provided enough factual detail to even permit this Court to compare Plaintiff to her fellow co-workers. As a result, Defendants are entitled to summary judgment with respect to Plaintiff's Title VII claims because she has failed to identify any evidence in the record establishing that similarly situated co-workers outside her protected class were treated more favorably.[10]

## III. COUNT II: "VIOLATIONS OF PLAINTIFF'S FIRST AMENDMENT RIGHTS"

In her complaint, Plaintiff alleges that Defendants terminated her employment in retaliation for her expressing a belief that "God ordained marriage to be between a man and a woman." (Doc. 1 ¶ 69.) According to Plaintiff, she told Defendant Lewis in the fall of 2014 that "the Bible does not condone same sex marriage and homosexuality" in response to him informing her about his daughter's upcoming wedding to another woman. (Doc. 38 at 2.) Soon thereafter, Plaintiff's behavior and performance became an agenda item for the management team, which ultimately decided to terminate her employment on February 3, 2015. (Doc. 29, Attach. 2 ¶ 43.)

---

[10] As noted above, Plaintiff's complaint did not include any allegations that she was retaliated against in violation of Title VII. Therefore, the Court need not address any of Plaintiff's arguments relating to this type of claim.

In their Motion for Summary Judgment, Defendants argue that Plaintiff's comment is not protected by the First Amendment because it was not public in nature. (Doc. 29, Attach. 1 at 22.) Defendants maintain that Plaintiff merely shared her personal opinion with Defendant Lewis, rather than offer commentary on a matter of public concern. (Id.) In response, Plaintiff contends that her speech was clearly public in nature because "the topic of gay marriage was . . . a subject of legitimate news interest, or of interest and of value and concern to the public." (Doc. 38 at 9-10.)

Government employers are prohibited from terminating employees in retaliation for speech protected by the First Amendment. Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149, 1159 (11th Cir. 2015) (citing Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989)). Individuals entering public service do accept a degree of limitation on their First Amendment right to freedom of speech. Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). However, public employees do retain a slightly restricted right to comment on matters of public concern. Id. (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

In Garcetti, the Supreme Court outlined a two-step inquiry into whether the First Amendment protects a public

employee's speech. First, the employee must have spoken as a citizen on a matter of public concern. Id., 547 U.S. at 418. If so, the court must determine whether the public employer was justified in treating the employee differently than members of the general public. Id. Both inquiries are questions of law to be resolved by the court. Alves, 804 F.3d at 1159.

The focus of this case is on the first inquiry, specifically whether Plaintiff[11] was speaking about a matter of public concern. Therefore, the dispositive issue is whether Plaintiff's "speech address[ed] a matter of public concern" or "only a matter of personal interest." Id. at 1162. The public or personal nature of the speech is assessed by looking to "the content, form, and context of a given statement, as revealed by the whole record." Id. (quoting Connick v. Myers, 461 U.S. 138, 147–48 (1983)).

Rarely will an employee's speech be entirely public or entirely private. Id. It is the primary purpose of the speech—public or private—that controls. Id. The failure to place the speech in the public sphere does not by itself render the speech private. Id. However, the Court may consider the "employee's attempt to make her concerns

---

[11] There is no argument that Plaintiff was speaking as an employee as opposed to a citizen.

public along with the employee's motivation in speaking." Id. In this respect, it is the employee's desire to "raise issues of public concern" that triggers constitutional protection. Boyce v. Andrews, 510 F.3d 1333, 1344 (11th Cir. 2007) (quoting Maggio v. Sipple, 211 F.3d 1346, 1353 (11th Cir. 2000)).

In this case, the Court concludes that Plaintiff was not speaking to a matter of public concern. While not dispositive, Plaintiff made the comment to only one person—Defendant Lewis. Moreover, Plaintiff only points to a single comment made in response to Defendant Lewis informing Plaintiff of his daughter's upcoming wedding: "the Bible does not condone same sex marriage and homosexuality." (Doc. 38 at 2.) There was no exchange of competing viewpoints, simply an unsolicited statement about gay marriage. The statement does not even offer any commentary on the debate whether homosexual individuals should have the right to marry their same-sex partners. Rather, Plaintiff's statement merely expresses a personal belief that, in Plaintiff's opinion, the bible condemns gay marriage and homosexuality.

In addition, the record does not contain any evidence Plaintiff even attempted to make her concerns known to the public. Rather, Plaintiff's sole motivation appears to have

been to inform Defendant Lewis that her religious beliefs do not support the idea of gay marriage and homosexuality. Only a tortured view of Plaintiff's action could conclude that she was attempting to raise an issue of public concern in the workplace. The record contains no evidence that Plaintiff voiced her position on gay marriage to any other individual in either her office or the public at large.

Plaintiff's entire argument is that her comment is public speech because it related to an issue that was "a subject of legitimate news interest, or of general interest and of value and concern to the public." (Doc. 38 at 9-10.) That Plaintiff's comment related to an issue being vigorously debated in the media and public sphere at that time is relevant, but not dispositive. "[T]he content, form, and context of [Plaintiff's] given statement, as revealed by the whole record," fails to establish that Plaintiff was speaking <u>publically</u> as to a matter of public concern. <u>Alves</u>, 804 F.3d at 1159 (quoting <u>Connick v. Myers</u>, 461 U.S. at 147-48). For these reasons, Defendants are entitled to summary judgment with respect to Plaintiff's First Amendment claims.

IV. <u>COUNT III: "RETALIATION UNDER THE ADEA"</u>

In her complaint, Plaintiff titles Count III as retaliation under the ADEA. (Doc. 1 at 10.) However,

Plaintiff does not allege any retaliation, only that she was terminated and replaced with "employees under 40." (Id. ¶¶ 74.) Outside of the title, Count III does not even contain the word "retaliation." Plaintiff is most likely attempting to allege disparate treatment claims based on age discrimination, which is what she alleged in the charge of discrimination filed with the EEOC.[12]

In their Motion for Summary Judgment, Defendants argue that the Eleventh Amendment grants them immunity from these claims. (Doc. 29, Attach. 1 at 18-19.) In addition, Defendants contend that Plaintiff has failed to establish a prima facie case because she has not identified a valid comparator. (Id. at 19-20.) In response, Plaintiff maintains that Defendants are not entitled to Eleventh Amendment immunity because Defendant GPDC is not an arm of the state.[13] (Doc. 38 at 5-8.) In another section of her

---

[12] The Court is baffled by Plaintiff's inability to even have the title of her claim correspond with her allegations. In the future, perhaps, counsel should have more pride in her work product, and spend even the slightest of time editing it for clarity and consistency.

[13] In an earlier portion of her response, Plaintiff argues that Defendants, in their official capacity, are not entitled to Eleventh Amendment immunity because she seeks prospective injunctive relief. (Doc. 38 at 4.) However, Plaintiff advanced this argument only with respect to her First Amendment claims. (Id. ("The Eleventh Amendment should not bar this lawsuit because the actions taken by the Defendants acting in their official capacities violated Plaintiff's rights under the First Amendment.").)

response, Plaintiff again points to Mses. Miller, Talley and Rogers as valid comparators (id. at 28-29), and vaguely argues that statements made by other co-workers concerning "generational differences" should be imputed to the management team as direct evidence of age discrimination (id. at 29-30).

Generally, the Eleventh Amendment grants states immunity from suits seeking to recover from state funds. Hobbs v. Roberts, 999 F.2d 1526, 1528 (11th Cir. 1993). However, Congress has the ability to abrogate that immunity when it both unequivocally expresses its intent to remove that immunity and acts pursuant to the authority granted in § 5 of the Fourteenth Amendment. Tennessee v. Lane, 541 U.S. 509, 518 (2004); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000). Congress did not abrogate a state's immunity for claims brought under the ADEA. Duva v. Bd. of Regents of the Univ. Sys. of Ga., 654 F. App'x 451, 453 (11th Cir. 2016) (citing Kimel, 528 U.S. 62).

A state's Eleventh Amendment immunity also extends to state agencies and entities acting as arms of the state. Ross v. Jefferson Cty. Dept. of Health, 701 F.3d 655, 659

---

Therefore, the Court does not interpret Plaintiff's response as advancing that argument with respect to her ADEA claims.

(11th Cir. 2012) (quoting _Manders v. Lee_, 338 F.3d 1304, 1308 (11th Cir. 2003)). Whether a state agency qualifies as an arm of the state is mostly determined by how state law defines that entity. _Versiglio v. Bd. of Dental Examiners of Ala._, 686 F.3d 1290, 1291 (11th Cir. 2012) (citing _Regents of the Univ. of Cal. v. Doe_, 519 U.S. 425, 429 n.5 (1997)). Other factors include the degree to which the state maintains control over the entity, how the entity is funded, and who bears responsibility for judgments against the entity. _Williams v. Dist. Bd. of Tr. of Edison Cmty. Coll., Fla._, 421 F.3d 1190, 1192 (11th Cir. 2005) (citing _Manders_, 338 F.3d at 1308).

In this case, it is clear that Defendant GPDC is a state agency. The act creating it expressly states that "[t]he Georgia Public Defender Council shall be an independent _agency_ within the executive branch of state government." O.C.G.A. § 17-12-1(b) (emphasis added). In her complaint, Plaintiff identified both Defendants GPDC and CCPD as state agencies. (Doc. 1 ¶¶ 6, 16.) Moreover, every court that has considered this question determined that Defendant GPDC was a state agency entitled to Eleventh Amendment immunity. See, e.g., _Johnson v. Gratham_, 1:17-cv-2758, 2017 WL 4402169, at *2 (N.D. Ga. Oct. 4, 2017) (unpublished); _Hooten v. Crawford_, 1:10-cv-1847; 2010 WL

2802619, at *2 (N.D. Ga. July 13, 2010) (unpublished) (citing Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995). Because Defendant GPDC is a state agency protected by Eleventh Amendment immunity, Defendants are entitled to summary judgment with respect to Plaintiff's ADEA claims.[14]

V.   COUNT IV: "VIOLATION OF SECTION 1981"

In her complaint, Plaintiff alleges that Defendants violated 18 U.S.C. § 1981 by discriminating against her because of her race. (Doc. 1 ¶ 79.) The parties both agree that the analytical framework for Plaintiff's § 1981 claims is identical to that employed for her Title VII claims. (Doc. 29, Attach. 1 at 10; Doc. 38 at 27); see Stallworth v. Schuler, 777 F.2d 1431, 1433 (11th Cir. 1985) (citing Lincoln v. Bd. of Regents of the Univ. Sys. of Ga., 697 F.2d 928, 935 n.6 (11th Cir. 1983)). As this Court discussed above, Defendants are entitled to summary judgment with respect to Plaintiff's Title VII claims because she is unable to identify a valid comparator. Supra Analysis.II. As a result, Defendants are also

---

[14] Even assuming the inapplicability of the Eleventh Amendment, Plaintiff's ADEA claims would still fail because she was unable to identify any similarly situated employees under forty whom were treated more favorably.

entitled to summary judgment with respect to Plaintiff's § 1981 claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 29) is **GRANTED**. As a result, all of Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 6th day of August 2018.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA